IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WESTERN VIRGINIA REGIONAL
EMERGENCY PHYSICIANS, LLC, *et al.*,

    **Plaintiffs,**

v.       Civil Action No. 3:23cv781

ANTHEM HEALTH PLANS OF
VIRGINIA, INC., *d/b/a* ANTHEM BLUE
CROSS BLUE SHIELD IN VIRGINIA,

and

HEALTHKEEPERS, INC.,

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs Western Virginia Regional Emergency Physicians, LLC; Lake Spring Emergency Group, LLC; Wildwood Emergency Group, LLC; Ingleside Emergency Group, LLC; and Kingsford Emergency Group, LLC's (collectively, the "ER Groups" or "Plaintiffs") Motion to Remand (the "Motion to Remand" or "Motion"). (ECF No. 5.)[1] Defendants Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross Blue Shield in Virginia and Healthkeepers, Inc. (collectively, "Anthem") responded. (ECF No. 16.) Plaintiffs replied. (ECF No. 25.) Accordingly, the matter is ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Thus, the Court will deny Plaintiffs' Agreed Motion for Oral Argument. (ECF No. 10.) For the

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

reasons articulated below, the Court will grant Plaintiffs' Motion to Remand, (ECF No. 5), and remand this action to the Circuit Court for the City of Richmond.

## I. Factual and Procedural Background

### A. Summary of Allegations in the Complaint

Each of the ER Groups contracts with hospitals in Virginia to staff the hospitals' emergency departments with physicians, nurse practitioners, and physician assistants (collectively, "providers"), and coordinates billing for the emergency medical services those providers administer. (ECF No. 1-1 ¶ 21.) None of the ER Groups has contracted for negotiated rates with Anthem, so their providers remain "out-of-network" with respect to Anthem for the services at issue. (ECF No. 1-1 ¶ 24.)

The law requires the ER Groups to provide emergency medical services to patients regardless of whether the providers were in-network under the patients' health insurance plans. (ECF No. 1-1 ¶ 27.) From approximately April 1, 2017 through December 31, 2020, and through the present date, the ER Groups' providers have delivered emergency medical services to thousands of Anthem-insured patients in Virginia. (ECF No. 1-1 ¶ 25.)

Under Virginia state law, Anthem must provide coverage to its insureds, including for emergency services by out-of-network providers. (ECF No. 1-1 ¶ 30.) Virginia regulations require Anthem to provide "a sufficient network of medical services providers in terms of number, mix of services, specialists, and geographic practice locations to meet those covered persons' health care needs, including for emergency medical services," as well as "a choice of at least two providers of each covered service type located within a 30-minute travel time or a 25-mile radius." (ECF No. 1-1 ¶ 32 (emphasis omitted).) According to the ER Groups, Anthem failed to establish a sufficient network of contracted providers to its members, so Anthem "had

2

actual and constructive knowledge" that its members would need to seek out-of-network emergency care and in fact caused its members to seek such care, including from facilities staffed by the ER Groups' providers. (ECF No. 1-1 ¶¶ 33–35.)

The ER Groups allege that "Anthem has unilaterally established grossly inadequate rates of compensation." (ECF No. 1-1 ¶ 47.) Further, they assert that Anthem compounded the problem of underpayment by reimbursing out-of-network payments directly to insured patients, thereby inflicting collection burdens and deficiencies on providers and unnecessary administration burdens on patients. (ECF No. 1-1 ¶ 48.) The ER Groups aver that Anthem designed this approach in order to pressure providers to enter into in-network agreements at below-market rates. (ECF No. 1-1 ¶ 49.)

**B.     Procedural Background**

On August 19, 2021, the ER Groups brought this three-count Amended Complaint in the Circuit Court for the City of Richmond. (ECF No. 1-1.) On March 17, 2022, prior to removal, the state court dismissed with prejudice two of the three counts in the ER Groups' Amended Complaint—specifically, the claims of tortious interference and unjust enrichment. (ECF No. 1-2, at 2.) Thus, only Count III, quantum meruit, remains. (See ECF No. 1-2, at 2.)

In their sole remaining count, Count III, the ER Groups assert entitlement to restitution under a *quantum meruit* theory because: (1) they provided valuable emergency medical services to Anthem insureds, for which Anthem must provide coverage under Virginia law and/or its insurance plans, (ECF No. 1-1 ¶ 67); (2) Anthem knew that the providers would provide and did provide emergency medical services to its insureds, and knowingly and voluntarily acquiesced in those services, (ECF No. 1-1 ¶ 68); (3) Anthem knew that the ER Groups expected compensation for their services at the fair market value, the ER Groups billed Anthem for these services, and

3

Anthem made "partial, yet grossly inadequate payments," (ECF No. 1-1 ¶ 69); and, (4) "[i]t would be inequitable and unjust for Anthem not to pay the ER Groups for the full reasonable value of emergency medical services." (ECF No. 1-1 ¶ 70.)

On November 17, 2023, Anthem filed its Notice of Removal. (ECF No. 1.) On December 18, 2023, Plaintiffs filed their Motion to Remand. (ECF No. 5.) On December 29, 2023, Plaintiffs filed an Agreed Motion for Oral Argument. (ECF No. 10.) On January 12, 2024, after requesting and receiving an extension of time, (ECF Nos. 9, 11), Anthem filed its response to the Motion to Remand. (ECF No. 16.) On January 29, 2024, after requesting and receiving an extension of time, (ECF Nos. 18, 19), Plaintiffs replied. (ECF No. 25.) Accordingly, the matter is ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Thus, the Court will deny Plaintiffs' Agreed Motion for Oral Argument. (ECF No. 10.) For the reasons articulated below, the Court will grant Plaintiffs' Motion to Remand, (ECF No. 5), and remand this action to the Circuit Court for the City of Richmond.

## II. Legal Standard

### A.   Subject Matter Jurisdiction and Removal

Subject matter jurisdiction represents "a threshold issue," which courts must consider "before addressing the merits" of a claim. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The party seeking removal bears the initial burden of establishing federal jurisdiction." *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11-cv-182 (HEH),

2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). No presumption favoring the existence of federal subject matter jurisdiction exists because federal courts have limited, not general, jurisdiction. *Id.* (citing *Pinkley Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)). Courts must strictly construe removal jurisdiction. *Id.* (citing *Mulcahey*, 29 F.3d at 151). "'If federal jurisdiction is doubtful, a remand is necessary.'" *Id.* (quoting *Mulcahey*, 29 F.3d at 151).

A defendant may remove a civil action filed initially in state court if the plaintiff could have originally brought the action in federal court. *Abraham*, 2011 WL 1790168, at *2 (citing *Yarnevic v. Brink's Inc.*, 102 F.3d 753, 754 (4th Cir. 1996)); *see* 28 U.S.C. § 1441(a). This ordinarily requires the Court to have either federal question jurisdiction under 28 U.S.C. § 1331[2] or diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[3] Here, Anthem does not assert that the Court may exercise diversity jurisdiction over any claim in this matter.

A federal district court may exercise federal question jurisdiction over a complaint only "'when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Lee v. Citimortgage, Inc.*, 739 F. Supp. 2d 940, 943 (E.D. Va. 2010) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003)). To properly exercise federal question jurisdiction, the

---

[2] 28 U.S.C. § 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[3] 28 U.S.C. § 1332 states, in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1) citizens of different States.

28 U.S.C. § 1332(a)(1).

5

Court must first determine whether federal or state law creates the plaintiff's cause of action. *Mulcahey*, 29 F.3d at 151. In general, the well-pleaded complaint rule guides the Court's inquiry, which means that "'courts ordinarily . . . look no further than the plaintiff's [properly pleaded] complaint.'" *Pinney v. Nokia*, 402 F.3d 430, 442 (4th Cir. 2005) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996)).

### B. Complete Preemption Under ERISA

As stated above, the general test for determining the existence of federal question jurisdiction asks whether the question appears on the face of a well-pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A federal defense, such as preemption by federal law, does not independently allow for removal. *Id.* at 392–93.

"An exception to the well-pleaded complaint rule occurs when a federal statute completely preempts state law causes of action." *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 177 (4th Cir. 2017). "Complete preemption converts an ordinary state common law complaint into one stating a federal claim." *Id.* (quoting *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002)) (alterations and internal quotation marks omitted). "Defendants may remove preempted state law claims to federal court, regardless of the 'label' that the plaintiff has used." *Id.* (citing *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 336, 371 (4th Cir. 2003); *Griggs v. E.I. DuPoint de Nemours & Co.*, 237 F.3d 371, 379 (4th Cir. 2001)).

"ERISA's broad civil enforcement provision, § 502(a), . . . has the potential to preempt state law causes of action." *Prince*, 848 F.3d at 177. Section 502(a) states, in pertinent part:

> (a) PERSONS EMPOWERED TO BRING A CIVIL ACTION
> A civil action may be brought—
>
> > (1) by a participant or beneficiary—
> > \* \* \*

6

> **(B)** to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan[.]

22 U.S.C. § 1132(a)(1)(B). The United States Court of Appeals for the Fourth Circuit has stated that "ERISA § 502(a) completely preempts a state law claim when the following three-prong test is met":

> (1) the plaintiff must have standing under § 502(a) to pursue its claims; (2) its claim must "fall[] within the scope of an ERISA provision that [it] can enforce via § 502(a)"; and (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.

*Prince*, 848 F.3d at 177 (quoting *Sonoco*, 338 F.3d at 372).[4]

### III. Analysis

#### A. The Parties' Arguments

Anthem removed this action from state court. (ECF No. 1.) As grounds for removal, Anthem asserts that this Court has federal question jurisdiction due to complete preemption under ERISA § 502(a) because the *quantum meruit* state law claim involves health benefit claims

---

[4] The United States Supreme Court has set forth a similar—but two-part—standard: "[(1)] [I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and [(2)] where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). The parties argue the Motion to Remand in terms of *Davila*'s two prongs. (*See, e.g.*, ECF No. 16, at 10, 14–15; ECF No. 25, at 3, 7.)

This Court assesses this case under the three-prong inquiry dictated by the Fourth Circuit in *Prince* and notes that these prongs track the Supreme Court's two-part inquiry in *Davila*. As other courts have explained, "[t]he first element of the [*Davila*] test is often further broken down by courts into two sub-inquiries," namely (i) whether the plaintiff is the *type of party* that can bring a claim under ERISA § 502(a)(1)(B), and (ii) whether the *actual claim* asserted "can be construed as a colorable claim for benefits" under ERISA § 502(a)(1)(B). *Emergency Care Servs. of Pa., P.C. v. UnitedHealth Grp., Inc.*, 515 F. Supp. 3d 298, 306 n.3 (E.D. Pa. 2021).

7

related to employee welfare plans governed by ERISA. (ECF No. 1 ¶ 5.) Anthem also states that it did not receive an accurate spreadsheet of health benefit claims for which the ER Groups were suing until October 18, 2023, rendering its removal on November 17, 2023 timely. (ECF No. 1, at 7.)

In their Motion to Remand, the ER Groups aver that the Court should remand this case to state court for at least two reasons: first, that Anthem filed its removal motion on an untimely basis, and second, that removal is substantively improper because "federal courts lack subject matter jurisdiction over the sole state law *quantum meruit* claim." (ECF No. 6, at 2–3.) The ER Groups assert that ERISA complete preemption does not apply for three reasons. First, the ER Groups aver that they lack standing under ERISA § 502(a) to bring their state common law claims because the claims do not arise from any assignment of benefits. (ECF No. 25, at 3–4.) Second, the ER Groups state that ERISA preempts only *right*-of-payment cases, not the *rate*-of-payment case they bring here. (ECF No. 6, at 10.) Third, the ER Groups argue that their quantum meruit claim concerns an independent duty on Anthem to compensate the ER Groups fairly for emergency medical services, so resolution of the claim does not require interpretation of ERISA-governed plans. (ECF No. 25, at 7–13.)

Because it is outcome-determinative, the Court will address the substantive question of ERISA complete preemption first. Under the first prong of the *Prince* test, the ER Groups lack standing to bring their claims under ERISA § 502(a): that provision only permits enforcement of rights arising under the terms of an ERISA-governed health benefits plan but the ER Groups' common law claim does not seek to enforce such rights. This is so notwithstanding the fact that the ER Groups are assignees of benefits of some ERISA-governed health plans, because the ER Groups assert no claims based on those assignments. In fact, the ER Groups expressly disclaim

8

them. Because complete preemption requires that the plaintiffs have standing to assert their claims under ERISA § 502(a), the conclusion that they do not ends the ERISA complete preemption analysis.

Anthem has not clearly demonstrated that this Court has subject matter jurisdiction over the case due to ERISA complete preemption, so remand to the Circuit Court for the City of Richmond is proper. *See Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11-cv-182 (HEH), 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)).[5]

### B. The ER Groups Lack Standing to Pursue Their Claims Under ERISA § 502(a) Because They Are Not ERISA-Covered Plan Participants or Beneficiaries and They Do Not State Claims Based on Assignment of Benefits

The ER Groups lack standing to bring their suit under ERISA § 502(a) because the claims they assert do not arise under any assignment of benefits to an ERISA-governed health benefits plan. The Court need not reach the second or third prongs of the *Prince* test because it finds that the first—whether the plaintiff would have standing under ERISA § 502(a) to pursue its claims—alone mandates remand.

For the reasons that follow, the Court concludes that the ER Groups possess neither direct statutory nor derivative standing to assert their claims under § 502(a).

---

[5] The ER Groups assert that removal is untimely because Anthem had notice of its grounds for removal as of 2020 based on a spreadsheet the ER Groups sent at that time, or at the latest by August 2023 based on an updated spreadsheet. (ECF No. 6, at 8.) Anthem counters that because these initials spreadsheets were "riddled with errors" and failed to give Anthem "'solid and unambiguous information that the case was removable'", the thirty-day period did not start running until Anthem received the corrected spreadsheet on October 18, 2023. (ECF No. 16, at 7–8, 12 (quoting *Bottom v. Bailey*, No. 1:12cv97, 2013 WL 431824, at *4 (W.D.N.C. Feb. 4, 2013)).)

Because the Court will grant the Motion on the merits, the Court need not address the issue of the timeliness of removal.

1. **The ER Groups Lack Direct Statutory Standing To Assert Their Claims Under ERISA § 502(a) Because They Are Neither Participants or Beneficiaries of an ERISA-Governed Health Benefits Plan**

The ER Groups lack statutory standing under § 502(a), which provides only that a "participant or beneficiary" may bring a civil action under the provision. 29 U.S.C. § 1132(a)(1). "Healthcare providers are generally not participants or beneficiaries under ERISA and thus lack independent standing to sue under ERISA." *Kearney v. Blue Cross & Blue Shield of N. Carolina ("Kearney II")*, 376 F. Supp. 3d 618, 625 (M.D.N.C. 2019) (citations and ellipses omitted). Anthem does not argue that the ER Groups possess direct statutory standing as a plan participant or beneficiary. Instead, Anthem posits that the ER Groups have derivative standing as assignees of ERISA-governed health benefits plans. The Court finds otherwise.

2. **The ER Groups Lack Derivative Standing To Assert Their Claims Under ERISA § 502(a) Because Their Claims Are Not Predicated on an Assignment of Benefits from an ERISA-Governed Plan Participant or Beneficiary**

The ER Groups do not have derivative standing to assert their claims under ERISA § 502(a), because the ER Groups assert independent causes of action that do not arise from the assignment of benefits from an ERISA-governed plan. Although healthcare providers are generally not participants or beneficiaries under ERISA, "[a] healthcare provider *may* have derivative standing to sue under ERISA if the provider has a valid assignment of the participant's or beneficiary's right to payment of their medical benefits." *Zhang v. Cigna Healthcare, Inc.*, No. 1:22-cv-1221 (MSN/IDD), 2023 WL 3727936, at *2 (E.D. Va. May 30, 2023) (citations omitted) (emphasis added).

However, where a plaintiff explicitly pleads "direct claims and causes of action that are not predicated on an assignment of benefits from the patient, . . . the mere existence of an assignment does not convert [plaintiffs'] state law claim . . . into a derivative claim to recover

10

benefits under the terms of an ERISA plan." *Emergency Care Servs. of Pa., P.C. v. UnitedHealth Grp. ("Emergency Care Servs.")*, 515 F. Supp. 3d 298, 310 (E.D. Pa. 2021) (quoting *N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co.*, No. CV181563, 2019 WL 6317390, at *5 (D.N.J. Nov. 25, 2019)) (quotation marks omitted); *see also Am. Funeral Fin., LLC v. UPS Supply Chain Sols., Inc.*, No. 1:17-cv-05475, 2019 WL 3252402, at *4 (N.D. Ga. July 19, 2019) ("[T]he existence of the assignment is irrelevant to complete preemption if the provider asserts no claim under the assignment." (alterations and internal quotation marks omitted)); *Alta Los Angeles Hosps., Inc. v. Blue Cross of Cal.*, No. 217cv03611, 2017 WL 3671156, at *3 (C.D. Cal. Aug. 24, 2017) ("[T]he mere fact that Plaintiff *could* have asserted a claim based on these assignments does not automatically mean that Plaintiff could not bring some other suit against Defendant based on some other legal obligation." (alterations and internal quotation marks omitted)); *Orthopaedic Care Specialists, P.L. v. Blue Cross & Blue Shield of Fla., Inc.*, No 12-81148-CIV, 2013 WL 12095594, at *2 n.6 (S.D. Fla. Mar. 5, 2013) ("[T]he existence of the assignment is irrelevant to complete preemption if the provider asserts no claim under the assignment."); *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 902 F. Supp. 2d 771, 782 (D. Md. 2012) (finding existence of assignments irrelevant to complete preemption if provider asserts no claim under the assignment); *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009) ("[W]here the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing."); *Children's Hosp. Corp. v. Kindercare Learning Ctrs., Inc.*, 360 F. Supp. 2d 202, 207 (D. Mass. 2005) (remanding to state court because "the fact that [plaintiff] *could have* sued as an assignee is not the test for complete preemption" and "[a]s a master of its

own complaint, [plaintiff] had the right to assert independent causes of action regardless of the assignment." (emphasis added)).

In *Kearney v. Blue Cross and Blue Shield of North Carolina ("Kearney I")*, a Middle District of North Carolina court denied the motion to remand after finding that "the record plausibly demonstrate[d] that Plaintiff ha[d] derivative statutory standing as the assignee of plan participants or beneficiaries to sue for unpaid benefits under ERISA." 233 F. Supp. 3d 496, 504 (M.D.N.C. 2017). The parties had entered into a provider agreement under which the plaintiff agreed to render medically necessary services to the defendant's insureds, and the plaintiff alleged that the defendant then improperly denied claims for services rendered. *Id.* at 500. The *Kearney I* defendant produced "several claim forms . . . contain[ing] purported assignments of participants' rights under their plans" to the plaintiff medical provider, and the plaintiff had alleged in the complaint that it had "submitted claims on behalf of patients for over eight years." 233 F. Supp. 3d at 504. The *Kearney I* court concluded that "[a]t this stage, . . . the record plausibly demonstrated that [p]laintiff has derivate statutory standing as the assignee of plan participants or beneficiaries to sue for unpaid benefits under ERISA." *Id.*

In *Emergency Care Services*, in contrast, an Eastern District of Pennsylvania court granted remand to state court after finding that ERISA did not completely preempt the plaintiffs' state law claims where the plaintiffs could not have brought their claims directly under § 502(a) and plaintiffs lacked standing to assert their claims under ERISA. 515 F. Supp. 3d at 309–10. The plaintiffs were professional emergency group practices that staffed hospital emergency departments and treated emergency room patients at numerous Pennsylvania hospitals. *Id.* at 302. They sued in state court, alleging state law claims related to reimbursement rates paid by the defendant health insurance companies. *Id.* Although the plaintiffs had obtained assignment

12

of benefits under the patients' insurance plans, the court correctly observed that "'the mere existence of an assignment does not convert [plaintiffs'] state law claim . . . into a derivative claim to recover benefits under the terms of an ERISA plan.'" *Id.* at 310 (quoting *N. Jersey Brain & Spine Ctr.*, 2019 WL 6317390, at *5). Section 502(a) permits recovery of benefits "due to [a participant or beneficiary] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a)(1). The *Emergency Care Services* court found that, because the plaintiffs' state law breach of contract claims were "not predicated on an assignment of benefits from the patient," the plaintiffs did not have standing to assert their claims under § 502(a). *Emergency Care Servs.*, 515 F. Supp. 3d at 310.

This case is more analogous to *Emergency Care Services* than to *Kearney*. Here, as in both *Kearny* and *Emergency Care Services*, the record demonstrates that at least some of the Anthem insureds who received medical services from the ER Groups' providers assigned their rights to health benefits under their ERISA-governed plans to the ER Groups. (ECF No. 16, at 14 (citing ECF No. 1 ¶ 9).) However, as did the plaintiffs in *Emergency Care Services*, the ER Groups expressly disclaim in their Amended Complaint any claim stemming from an assignment of benefits under a health plan. (ECF No. 25, at 3 (citing ECF No. 1-1 ¶ 20).) *See Emergency Care Servs.*, 515 F. Supp. 3d at 310. Unlike the plaintiffs in *Kearney*, the ER Groups did not enter into a provider agreement with Anthem. *See Kearney I*, 233 F. Supp. 3d at 500. Thus, the ER Groups could not sue to recover money owed to them *as medical providers* under the terms of any ERISA plan because no plan even plausibly governed their relationship with Anthem. *See id.*; *see also Emergency Care Servs.*, 515 F. Supp. 3d at 310 (observing that "the mere existence of an assignment does not convert [plaintiffs'] state law claim . . . into a derivative claim to

recover benefits under the terms of an ERISA plan" where the state law claims asserted are distinct from the benefits-related claims that may be enforced via § 502(a) (internal quotation marks omitted)).

Although the *Kearney I* court found sufficient indicia of ERISA standing based on the existence of assignment and the fact that the plaintiff had previously asserted claims on behalf of insureds, the weight of the case law suggests that out-of-network providers asserting rate-of-payment claims, such as the ER Groups here, lack standing to sue under ERISA § 502(a). This is so even if the plaintiffs *happen to have* assignments of benefits under ERISA-governed plans, so long as the plaintiffs do not sue to enforce benefits *arising from* those assignments. *See, e.g., Emergency Care Servs.*, 515 F. Supp. 3d at 310; *Am. Funeral Fin., LLC*, 2019 WL 3252402, at *4; *Alta Los Angeles Hosps., Inc.*, 2017 WL 3671156, at *3; *Orthopaedic Care Specialists, P.L.*, 2013 WL 12095594, at *2; *Feldman's Med. Ctr. Pharmacy, Inc.*, 902 F. Supp. 2d at 781; *Lone Star OB/GYN Assocs.*, 579 F.3d at 529; *Children's Hosp. Corp.*, 360 F. Supp. 2d at 207. Although the ER Groups received assignment of benefits to some ERISA-governed plans, that does not end this Court's inquiry. *See Emergency Care Servs.*, 515 F. Supp. 3d at 310. The ER Groups do not assert any claim arising from any assignment of benefits, so they lack standing to bring this action under ERISA § 502(a). *See id.*

This lack of standing alone mandates remand. *See, e.g., Sonoco*, 338 F.3d at 374 (reversing denial of motion to remand, ending analysis after concluding employer lacked standing under § 502(a)); *Zhang*, 2023 WL 3727936, at *2 (remanding after analyzing only the first *Prince* prong, concluding that the plaintiff lacks standing under § 502(a), and declining to consider the remaining prongs). The Court need not and does not reach prongs 2 and 3 of the *Prince* analysis—namely, whether the claim falls within the scope of an ERISA provision that is

14

enforceable via § 502(a), and whether the claim is capable of resolution without an interpretation of an ERISA-governed benefit plan. *See Prince*, 848 F.3d at 177.

## IV. Conclusion

For the reasons articulated above, the Court will grant Plaintiff's Motion to Remand. (ECF No. 5.) The Court will remand this action to the Circuit Court for the City of Richmond for further proceedings.

An appropriate Order shall issue.

Date: 07/22/2024　　　　　　　　　　　　　　/s/
Richmond, Virginia　　　　　　　　　　　　M. Hannah Lauck
　　　　　　　　　　　　　　　　　　　　United States District Judge

15